Robert E. Brooksbank et ux.

*v.*

W. M. Leech, Commissioner, etc.

James H. Johnston et ux.

*v.*

W. M. Leech, Commissioner, etc.

(*Knoxville,* September Term, 1959.)

Opinion filed December 11, 1959.

Rehearing denied February 5, 1960.

Ladd & Qualls, Harriman, for plaintiffs in error.

James M. Glasgow, Assistant Attorney General, for defendant in error.

178

MR. JUSTICE BURNETT delivered the opinion of the Court.

The plaintiffs in error filed their suits against the Commissioner of Highways and Public Works for the State of Tennessee for the taking of, and damage to, property incident to construction of a controlled access facility, commonly called a super highway. The defendants demurred on the ground that Article 1, Section 17, of the Constitution of Tennessee, and Code Section 20-1702, T.C.A., inhibits suits of this character. The trial judge sustained the demurrers, but allowed amendments to the declaration making Roane County a party defendant. The property owners prayed an appeal to the Supreme Court, but the trial judge properly denied the appeal pending the disposition of the case as to Roane County. Thereafter the land owners took a non-suit as to the County and prayed and were granted an appeal to this Court. The cases have been ably briefed and argued. We now have the matter for disposition.

█ It is stated in oral argument and in the brief that the single question is involved as to whether or not a land owner may maintain a suit against the State Highway Commissioner for the taking of land for construction of a limited access highway. The statement of the issue thus involves more than the demurrer sets forth on its face. Of course Article 1, Section 17 of the Constitution authorizes the Legislature to enact Section 20-1702, T.C.A., which prohibits all courts in this State from entertaining a suit against the State, its officers, etc., with the view to reach the State funds. But before reaching this proposition we think that it is necessary to observe that in the absence of a provision by the Legislature for compensation to private owners for taking their property by the State would violate Article 1, Section 21 of our Constitution and the Fourteenth Amendment or the due process clause of the Federal Constitution. Of course what has just been said is the basis for the suits and the argument herein by the plaintiffs in error. This being true we must necessarily look to the statutes of the State to see whether or not the Legislature has provided a means whereby the property owner may be compensated when the State takes the property of the owner.

Assuming the position of the plaintiffs in error as correct their proposition is stated in the affirmative by the Supreme Court of the United States in Chicago, *B. & O. R. Co. v. City of Chicago,* 166 U.S. 226, 17 S.Ct. 581, at page 584, 41 L.Ed. 979, wherein the Court states:

"It is proper now to inquire whether the due process of law enjoined by the fourteenth amendment requires compensation to be made or adequately secured to the owner of private property taken for public use under the authority of a state."

In answering this question, among other authorities used to support that Court's answer to the question, is the following quotation from Chief Justice Marshall from *Fletcher v. Peck,* 6 Cranch 87, 135, 136, 3 L.Ed. 162:

" 'It may well be doubted whether the nature of society and of government does not prescribe some limits to the legislative power; and, if any be prescribed, where are they to be found, if the property of an individual, fairly and honestly acquired, may be seized without compensation? To the legislature all legislative power is granted, but the question whether the act of transferring the property of an individual to the public be in the nature of legislative power is well worthy of serious reflection.' "

And then that Court answers this question thus:

"In our opinion, a judgment of a state court, even if it be authorized by statute, whereby private property is taken for the state or under its direction for public use, without compensation made or secured to the owner, is, upon principle and authority, wanting in the due process of law required by the fourteenth amendment of the constitution of the United States, and the affirmance of such judgment by the highest court of the state is a denial by that state of a right secured to the owner by that instrument."

This Court in *Southern v. Beeler,* 183 Tenn. 272, 195 S.W.2d 857, in dealing with the subject of education said it is the duty of the court to examine all Code Sections dealing with that subject and each of these Code Sections must be considered in pari materia. We are trying to find the object and the construction of these statutes in regard to compensation to land owners. To

do so we consider all statutes on condemnation together for the purpose of seeing what the law makers had in mind in enacting these statutes. Thus it is upon an examination of the statutes in reference to the construction of State highways we find that in Section 54-506, T.C.A., the Legislature has provided that all judgments and other expenses in condemnation procedures shall be paid out of the general funds of the County "in which the expenses are incurred."

This Code Section originated in the Public Acts of 1917 and has been before the Court many times. In the first of these cases, *State Highway Department v. Mitchell's Heirs,* 142 Tenn. 58, 216 S.W. 336, this Court speaking through the late Chief Justice Green announced the rule that a land owner's remedy for the taking of his lands for State highway purposes is against the County. Subsequent to this case many others were announced and one by the Court of Appeals, *Whitlow v. Hardin County,* 13 Tenn.App. 347, again held directly that the County is liable to the land owner for the damages to property taken by the State regardless of the fact of whether or not the County was interested in the road being built through that County and when the road was taken for State highway purposes alone.

Subsequent to the 1917 Act, which is referred to and carried in Code Section 54-506, T.C.A., the Legislature in 1931 in Chapter 57, the Public Acts of that year, enacted what is now carried in the Code as Section 54-511, T.C.A. By the enactment of this Section of the Code the State assumed the burden for the damages sustained by one whose property is taken for State highway purposes. As to the method of the Counties enforcing this right against the State we are not here

concerned because that is a question between the County and the State. Various suggestions have been made as to how this right might be enforced as in *Baker v. Donegan,* 164 Tenn. 625, 57 S.W.2d 1095, 52 S.W.2d 152, it was suggested that mandamus would be a proper remedy to enforce the payment of the judgment by the Commissioner. But as said we are not interested in that problem. By Section 54-511, T.C.A., which is a codification of Chapter 57 of the Public Acts of 1931, this Court held in *Phillips v. Marion County,* 166 Tenn. 83, 59 S. W.2d 507, that under this Statute the County was liable to the land owner and not the State, that is, the State not directly liable to the land owner but the land owner's right of action was against the County in which the land lay and the State was not liable directly to the land owner.

In *Baker v. Rose,* 165 Tenn. 543, 56 S.W.2d 732, 734, this Court held that Rose was entitled to satisfy his claim for the land taken in condemnation proceedings for road purposes against the County. The Court said:

"The courts are open to the landowner to enforce his right of action against the county, without further legislative action, as indicated in *State Highway Department v. Mitchell's Heirs,* supra. His rights against the state are not identical, and may be enforced only if sufficient funds are made available for the satisfaction of his claim by legislative action."

The very obvious and natural reason as advanced here by the plaintiffs in error that the County was not taking any of this property for road purposes; that it was being taken entirely for this super highway by the State Highway Commissioner and that therefore the County should

not be liable is advanced. It must be remembered though that a County is an involuntary political or civil division of the State which is created by a statute to aid in the administration of the government and is merely an agency or arm of the State government. This being true it is perfectly proper and natural for the Legislature of the State to provide that a County would be liable for roads run through that County. There are many obvious reasons of why this is reasonable and natural. In the first place the land lies in the County; the witnesses as to its value are there and the courts there are open where it is convenient for these witnesses to come and then after a reasonable and fair judgment is entered against the County the County pays for this land. The County may be made to raise the funds to pay for this condemnation as suggested in *State Highway Department v. Mitchell's Heirs,* supra, where it is suggested that the person owing the judgment against the County had the right to a mandamus to compel the levy of a sufficient tax for the satisfaction of his judgment. Thus it is by statute and judicial interpretation thereof that a fund is provided and a way is also provided for suit to satisfy this claim. In other words the State is not taking the property of these plaintiffs in error without leaving him or providing him with a means of securing adequate compensation for the property taken. He may sue the County in which the land lies and there obtain just compensation for the property as taken.

The very able argument is made on behalf of the plaintiffs in error that under the statutory or judicial authorities above cited they are not applicable here. The insistence is that a different rule should prevail here wherein this land is taken under Code Section 54-2001

et seq., T.C.A., which is an enactment of the Legislature of 1955 for the purpose of these controlled access facilities and these super highways and that the governmental authorities thus by taking this land and closing streets and roads that the State in enacting this legislation intended to create a different scheme of remedies for land owners. Thus that there is no means to be compensated for the land taken except by suit against the State or the State Highway Commissioner. We think though, as said in the outset hereof, that this new statute (54-2001 et seq.,) must be and has to be considered in pari materia with Section 54-201 et seq., which deals with the acquisition of lands for highway purposes. All of these statutes must be construed together.

■■ Lastly the plaintiffs in error by supplemental brief insist that Chapter 216 of the Public Acts of 1959 in Section 13 thereof specifically provides that all judgments rendered shall be paid out of the general funds of the municipality, County or State, whichever may be the condemnor gives them a right and authorizes suit and judgment to be brought and entered directly against the Commissioner. We cannot agree to this reasoning and think that this legislative enactment likewise must be read in pari materia with the other Code Sections affecting eminent domain. Such a section must be strictly construed because they are in derogation of the State's exemption from suits. *State ex rel Allen v. Cook,* 171 Tenn. 605, 106 S.W.2d 858.

■ When we apply such a construction to this Act, that is, Section 13 of Chapter 216 of the Public Acts of 1959, there is certainly no direct permissive right for suits directly against the State or its Commissioner of

Highways who of course merely stands in the place of the State.

Thus it is after reading the authorities and the statutes and giving the matter considerable thought and study we think there is nothing to indicate that the General Assembly intended to depart from the usual and ordinary condemnation procedure prescribed by the general statutes hereinabove referred to. These statutes providing means and ways for the land owner to be compensated for the land taken by the State. There is nothing in violation of our State Constitution or the Federal Constitution in this taking and the suit consequently cannot be maintained against the Commissioner of Highways as herein instituted. The result is that the judgment of the trial court must be affirmed.

## On Petition to Rehear

The plaintiffs in error filed herein a courteous, dignified and forceful petition to rehear. To all intents and purposes this petition and the brief in support thereof is a re-argument of what was heretofore argued in the brief and at the Bar of this Court.

█ The petition now, and the brief in support thereof, is in effect based on the false premise in that it is argued that the suit is not against the State but against the Commissioner of Highways and thus should be allowed to be maintained. We think that in the original opinion this question was answered without going into any particular detail because the question had long been settled. This question has been settled by many former decisions many of which are cited in *Automobile Sales Co. v. Johnson,* 174 Tenn. 38, 122 S.W.2d 453, 454, 120 A.L.R. 370. In other words under these authorities this

suit although nominally against the Commissioner of Highways is a "suit against the State". We adhere to this rule. It is not our purpose to legislate because this is a function of the Legislature. The Legislature has provided a means whereby the property owner may be compensated for his property as taken as is pointed out in our original opinion. It is not our function to find other ways or to suggest that other ways might be better.

It is very ably argued that in sticking by the rule which was promulgated by the Legislature in the various statutes set forth in the original opinion and as followed by us is "the old horse and buggy rule". What we said in the closing sentences of the paragraph immediately preceding this we think is a sufficient answer to this argument. The argument is that the rule which we have long followed in this State as pointed out in our original opinion requiring the land owners to bring suit against the County instead of the State is outmoded. The interesting argument is made that numerous suits may be filed against the county without the knowledge of the Commissioner of Highways and that judgments may be presented to the Commissioner for payment by the county long after the project has been completed. Then it is argued, too, about the various and sundry abilities and the small pay, etc., of the District Attorney Generals who normally represent the counties in these things. This all of course is very interesting and might be a good argument to make to the Legislature to change the method and mode of bringing these suits, and having these land owners paid, but it certainly is not an argument that is appealing to the judiciary when that body tries as hard as possible to stay within the constitutional limits of its branch of the government.

Argument is made on a number of questions concerning the relationship between the counties and the Commissioner of Highways which are not essential to the decision of this lawsuit. Clearly if we undertook to write and rule on questions that are not pertinent to the decision of this lawsuit it would be pure dictum.

We think under the authorities cited in our original opinion and for reasons therein expressed that the Legislature has given to the land owner relief by way of damages by suits against the county in the original and the usual way. As we pointed out in the original opinion procedural remedy was provided under the acts so that there could be no question about a land owner being denied his constitutional right to just compensation. This Court in *Stewart v. Sullivan County,* 196 Tenn. 49, 264 S.W.2d 217, recognized that the loss of access due to closing of roads is a taking within the sense of the Constitution and that thus there is nothing taken away from the land owners herein that precludes him or them for getting just compensation for the land as taken.

We have carefully considered this petition to rehear and feel that our original opinion covers the matter thoroughly. For the reasons herein stated the petition to rehear must be denied.