DAVE JONES, MARY ELLEN EASTERLY, EMMA
NEIL, ROBERTA SHULTZ, CISSY McCAMEY,
NANCY ANN CHARLES and RALPH CHARLES,
Appellees-Appellants, v. COCKE COUNTY,
Tennessee, Appellants-Appellees.
—456 S.W.2d 665.

Western Section.  March 11, 1970.

Rehearing Denied April 1, 1970.

Certiorari Denied by Supreme Court July 6, 1970.

556

Taylor, J., not participating on petition to rehear.

Fred L. Meyers, Sr., Myers & Myers, Edward F. Hurd, Newport, for Cocke County.

J. Kenneth Porter, Porter & Porter, Newport, for Dave Jones, and others.

MATHERNE, J. This is an inverse condemnation suit wherein the plaintiff landowners sue Cocke County for

the taking of and damage to their property by flooding. It is alleged that the construction of a bridge and approaching embankment thereto severely restricted the natural drainage of the flood waters of the Nolichucky River, causing plaintiffs' property to be flooded and damaged.

This suit was filed in 1963 and was dismissed by the trial judge at the original hearing on the ground the plaintiffs had no cause of action against the defendant Cocke County, because the embankment which impeded the drainage of flood water was located in Hamblen County. On appeal the Court of Appeals reversed in an opinion rendered on August 2, 1967 and published as Jones v. Cocke County, 57 Tenn.App. 496, 420 S.W.2d 587. The opinion of the Court of Appeals concluded with the following statement:

"It results the circuit judge's decision that these plaintiffs did not have a right of recovery against Cocke County is reversed. A judgment in favor of the plaintiffs shall be entered in this court. The suit is remanded to the circuit court to determine the amount of damages, if any, the plaintiffs are entitled to."

On remand and trial a jury verdict was rendered for the defendant on June 25, 1968, however, plaintiffs motion for a new trial was sustained. The cause was then tried on January 28, 1969 and resulted in a mistrial in that the jury could not reach a verdict. The present trial was held on May 28, 1969 wherein the jury found for the plaintiffs and awarded $20,000.00 as damages.

On motion for New Trial the Trial Judge suggested a remittitur of $7,500.00, which was made by the plaintiffs

under protest, and a judgment was entered in favor of plaintiffs for $12,500.00.

The defendant on appeal in error assigned five errors wherein the following issues were raised: (1) There is no competent evidence to sustain the judgment; (2) The verdict is excessive, and so excessive as to be the result of passion, prejudice and caprice on the part of the jury; and (3) The Trial Judge erred in instructing the jury as to nominal damages.

The plaintiffs on appeal in error insist the Trial Judge erred in suggesting the remittitur of $7,500.00.

■ The facts establish the plaintiffs suffered flood damages on March 13, 14, and 15, 1963. There is material evidence from which the jury could find the embankment does restrict the natural drainage of flood water. There is testimony that in 1963 when the plaintiffs suffered flood damage the Nolichucky River was not at high flood stage. There is testimony of floods in 1935 and 1940 when the Nolichucky River flooded plaintiffs' land; these were severe floods which inundated the entire valley. Witnesses testified who had observed those floods and had fixed the exact height reached by the flood waters in those years. These same witnesses testified the flood of 1963 was from 10 to 15 inches higher on plaintiffs' land than the highest point reached in the floods of 1935 and 1940. It is also of importance to note the high water marks of the 1963 flood did not reach as high a level on the property situated below the embankment as the 1935 and 1940 floods, and the same is true as to property located some two miles upstream from the embankment. There is material evidence that the river does not now have to reach a high flood stage in order to flood plaintiffs' land because the

embankment backs the water onto plaintiffs' land when the river is at a much lower stage.

Therefore, there is material evidence from which the jury could find the plaintiffs' land has been damaged due to additional exposure to floods because of the construction of the bridge and approach thereto. Assignment of Error 1 is overruled.

■ The defendant claims the Trial Judge erred in charging the jury on nominal damages. In this respect the Court charged the jury as follows:

"I charge you that where property is taken that the landowner has a right to recover for such amount as is taken. That means in this case if he is entitled to a recovery if there were any damages or if he is entitled to recover the landowner that that would be whatever the property was lessened in value by the building of the dike in the shape and form and manner that it was built in. [In other words, if the property was not lessened then the damages would be only nominal which he is entitled to recover in this case under the law of this particular case."]

\* \* \* \* \* \*

["I have told you that the plaintiff is entitled to recover nominal damages under the law of this case, but other than nominal damages then the burden is on the plaintiffs to make out their case by a preponderance of the evidence."]

That portion of the above charge enclosed by parenthesis is the portion to which the defendant objects. The defendant insists the objected to portion of the charge is error in that no definition of nominal damages was

given to the jury. We admit the charge on this point could have been more accurately stated. However, when the entire charge as above quoted is taken in context we believe the jury understood it was necessary to find actual damage before the award as made could be given. There was material evidence to support a finding of actual damage, and we do not find from the record any indication the jury was misled on this point. We concur with the Trial Judge that the award as made by the jury was based on a finding of actual damage, and that finding is supported by competent evidence. Assignments of Error III, IV and V are overruled.

The proof clearly established the plaintiffs suffered damage to 200 acres of river bottom land. The Trial Court properly limited proof of damages to that damage which related to the land. Proof concerning the amount of loss of personal property in the 1963 flood was not admitted to the jury. The parties and the Trial Court, in the light of the prior opinion of the Court of Appeals in this case, treated the taking as having occurred in 1963 at the time the first damage resulted to plaintiffs' land due to the construction of the bridge and embankment in 1958. The proof establishes the land has not been flooded since 1963.

The plaintiffs proved damages by showing the value of the land before and after the 1963 flooding which the proof establishes was caused by the bridge and embankment constructed in 1958. Ralph Charles, one of the plaintiffs, testified the land affected was worth $1,000.00 per acre before and $500.00 after the 1963 flood, giving a total damage of $100,000.00 to the 200 acres of river bottom land. Witness R. T. Felknor, duly qualified to give an opinion on the value of the land, placed a fair market

value of $175,000.00 on the 200 acres of river bottom land prior to the 1963 flood, as against a $125,000.00 valuation after the flood, or a damage of $50,000.00. Witness J. W. Rippetoe, a Morristown, Tennessee real estate agent for the past nineteen years placed the before and after fair market value of the same 200 acres at $1,000.00 per acre before and $600.00 per acre after, with an $80,000.00 damage figure.

The defendants introduced the deposition of witness John Bewley who observed the 1935 flood and the 1963 flood at plaintiffs' farm. This testimony is not very clear but the Trial Court seemed to understand the witness placed the water at a level 10 inches higher in the 1935 flood than the 1963 flood. The deposition of witness R. B. Sawyer was read. This witness owns a farm two miles upstream from the bridge and embankment. Sawyer testified the 1935 flood at his farm reached a level three and one-half feet higher than in 1963. R. D. Ford, Chairman of the County Court for Cocke County merely testified in effect the bridge and embankment were there and were built by the State of Tennessee. C. H. Fox, County Surveyor of Cocke County testified he was on the land the day before the trial and it was worth $800.00 to $1,000.00 per acre, and he supposed it was worth about that much in 1963. From the record witness Fox apparently never saw the farm except on the day before the trial, and had no knowledge concerning floods before or after 1963. This constituted the substance of the defendant's evidence

On the issue of the amount of the verdict, which amount as reduced is attacked by both parties on appeal, the Trial Judge on motion for new trial held as follows:

"* * * the Court is of the opinion that the motion for a new trial should be and the same is hereby overruled subject to an acceptance by the plaintiffs of a remittitur in the sum of $7,500.00, reducing the judgment to $12,500.00; otherwise said motion is granted."

In suits for unliquidated damages our courts have consistently held the amount of damages is primarily a question for the jury, and the jury's verdict, after it has received the careful scrutiny and approval of the Trial Judge, is entitled to great weight in the Court of Appeals. D. M. Rose & Co. v. Snyder (1947) 185 Tenn. 499, 206 S.W.2d 897. When the trial judge in reviewing the amount of such a verdict suggests a remittitur, that fact adds weight to the judgment of the trial court in the amount so reduced. Smith v. Sloan (1949) 189 Tenn. 368, 225 S.W.2d 539. Where the trial judge has ruled upon the issue of excessiveness of the verdict in actions for unliquidated damages, his ruling will not be disturbed on appeal unless abuse of discretion is shown, and this is so regardless of whether the ruling results in granting or overruling a motion for new trial, or in the suggestion of a remittitur. Clinchfield Railroad Co. v. Forbes (1966) 57 Tenn.App. 174, 417 S.W.2d 210.

The foregoing authorities do not prohibit a review of the amount of the verdict by the appellate courts. To the contrary it has been held the clear legislative intent of T.C.A. sec. 27-118 and sec. 27-119 was to confer on appellate courts full power and authority to revise and correct all errors relating to remittiturs as suggested, or not suggested, by the trial court consistent with recognized rules of appellate practice and procedure. Murphy Truck Line v. Brown (1958) 203 Tenn. 414, 313 S.W.2d 440.

Obviously the Trial Judge, as shown by the quoted portion of the judgment, was of the opinion the verdict "should be reduced." The plaintiffs made remittitur under protest, and on appeal if this Court is of the opinion the verdict "should not have been reduced" we must reverse that action of the Trial Judge. T.C.A. sec. 27-118.

In the case of Chapman v. Mayor and Bd. of Aldermen of City of Milan (1960) 48 Tenn.App. 196, 344 S.W.2d 773, the plaintiff landowner brought suit under T.C.A. sec. 23-1423 to recover the value of property taken by the City for street purposes, and for incidental damages to the remainder of the property. The plaintiff put on proof as to the value of the property taken at the time of taking, and also proof as to the amount of damages to the remainder. The defendant condemnor offered no proof as to value or damages and only offered one witness, who testified to the physical situation prevailing before and after the taking. The jury awarded as the value of the land taken a figure which was only 40% of the average value as fixed by five witnesses; and awarded as incidental damages a figure of only 75% of the average damage figure as given by plaintiff's witnesses. On motion for new trial the trial judge suggested a remitttiur of $1,500.00 of the $3,000.00 value of land taken award; and suggested a remittitur of $5,500.00 of the $8,000.00 incidental damages to the remainder award. On appeal by the landowner the Court, speaking through Judge Avery, stated:

"Where the amount of the verdict is supported by the evidence, and its amount is the only action on the part of the jury from which the Trial Court could find that the jury acted capriciously or from passion, prejudice or sympathy, it would become the duty of the Appellate

Court to restore the remittitur ordered by the Trial Court and enter judgment upon the verdict as returned by the jury. Harber v. Smith, 40 Tenn.App. 648, 292 S.W.2d 468 and Garner v. State, 37 Tenn.App. 510, 266 S.W.2d 358, T.C.A. Section 27-118.''

\*    \*    \*    \*    \*    \*

''It is very true that if the evidence in the case presents to the Trial Court such facts as that it would shock the conscience of the Court to enter judgment for the amount of the verdict of the jury, he should not do so, but should grant a new trial or make such adjustment of the verdict by way of remittitur, as would relieve such shock of conscience, except in cases, of course, where the verdict is so inadequate as to shock the conscience of the Court, and in such cases he can do nothing except grant a new trial. Of course, when the record comes to this Court of the trial had in the lower court, if the action of the learned Trial Judge is to be sustained in requiring remittiturs the record must show to this Court such a state of facts that would be at least calculated to shock the conscience of the Court \* \* \*''

''If we were to arrive at any other conclusion except that the jury was warranted in its verdict from this proof, as revealed by the record in this Court, we would have to conclude that both the witnesses and the jury acted unfairly and that the proof is such as to discredit both the witnesses and jurors. We find ourselves unable to do so.''

We also call attention to the unreported case of Clemons v. Mosley (1969), Opinion filed by the Supreme Court on December 8, 1969, wherein the Court of Appeals was affirmed in restoring a $10,000 verdict which had been

reduced to $3,500.00 by the trial court on motion for new trial. The *Clemons case* was a personal injury action, but the principal is the same because we are dealing with a jury verdict on unliquidated damages. In the *Clemons case* the trial judge had found the jury "verdict is so excessive as to indicate passion, prejudice and unaccountable caprice on the part of the jury." The Court of Appeals found no basis for the verdict to be so characterized, and went on to discuss the action of the trial court viewed in the light of the absence of a finding of passion, prejudice and caprice. The Supreme Court adopted the language of the Court of Appeals in this respect as follows:

"If we dismiss the above stated reason for the suggestion of remittitur and consider the same as surplusage, we are still at loss to find any evidence upon which to justify a suggestion of remittitur.

"Therefore, the question is reduced to the issue of the reasonableness of the amount of the verdict. This simply means that the conscience of the Court must come into play in considering the amount of the verdict. When we lŏok at all the evidence in this cause and apply thereto the factors to be considered by the Court in passing upon the amount of a verdict, we conclude that the jury verdict rendered in this cause is reasonable, and said amount does not shock the conscience of the Court. The jury being the body primarily responsible for determining the amount of the verdict did not in the opinion of this Court exceed its authority nor go beyond the bounds of reason in fixing the amount of the verdict at $10,000.00. We further hold that there is ample material evidence in the record to sustain the verdict in that amount."

■ We hold the reasoning in the *Chapman case* and in the *Clemons case* are applicable to the case at bar. The lowest damage figure proved by the plaintiff landowner was $50,000.00; the jury awarded $20,000.00 damages. The defendant Cocke County did not present proof as to damage in any amount. The jury found and the Trial Court agreed there was damage in some amount. The question was whether the amount of $20,000.00 shocked the conscience of the court. We hold under the proof in the record, the verdict of $20,00.000 was reasonable, justified by the proof, not excessive in any amount, and does not shock the conscience of the Court.

It results the defendant's Assignment of Error II is overruled. Plaintiffs' Assignment of Error that the Trial Judge erred in suggesting remittitur is sustained.

Judgment may be entered in this Court restoring the remittitur and awarding judgment in favor of the plaintiffs and against the defendant in the amount of $20,-000.00 plus interest from the date the judgment in the Trial Court was entered of record. TCA sec. 27-118; T.C.A. sec. 47-14-110. This cause is remanded to the Circuit Court of Cocke County for enforcement of the judgment rendered herein. Cost in this cause is adjudged against the defendant, Cocke County.

Carney, P.J. (W.S.), and Taylor, J., concur.

## ON PETITION TO REHEAR

MATHERNE, J.

■ By Petition to Rehear the plaintiffs insist interest on the judgment rendered in their favor should accrue from March 15, 1963, the date plaintiffs' land was flooded. Plaintiffs insist the accrual of interest in this case is not

governed by T.C.A. sec. 47-14-110, and rely on Sullivan County v. Pope (1969) 223 Tenn. 575, 448 S.W.2d 666 as authority. The thrust of plaintiff's argument is that the flood on March 15, 1963 constituted the taking of plaintiffs' land and under the *Sullivan County case,* supra, interest accrues from that date.

The taking involved in this lawsuit was defined by the Court of Appeals in its former opinion (57 Tenn.App. 496, 420 S.W.2d 587), wherein the Court stated:

"From these facts there appears to be little doubt that the embankment on the Hamblen County side served as a dike and caused the flood water to rise to greater heights on plaintiffs' property. Furthermore, this obstruction restricted and impaired the normal runoff, causing the water to remain for a longer period on the property. Consequently, we concur in the circuit judge's finding there had been a taking of plaintiffs' property.

Our courts have said for there to be a taking, it is not necessary for the owner to be entirely deprived of the use of the property. Any destruction, restriction or interruption of the common and necessary use may constitute a taking. Lea v. Louisville & N. R. Co., 135 Tenn. 560, 188 S.W. 215.

Actual or physical entry is not necessary. A landowner may have a right of action for the interruption of ingress or egress or from the interference or diverting the natual drainage. Morgan County v. Neff, 36 Tenn. App. 407, 256 S.W.2d 61; Hollers v. Campbell County, 192 Tenn. 442, 241 S.W.2d 523; Donahue v. East Tenn. Natural Gas Co., 39 Tenn.App. 438, 284 S.W.2d 692."

In the *Sullivan County case* relied on by the landowner there was an actual physical taking by the condemnor and the owner was dispossessed. The Supreme Court held interest accrued as of the date the condemnor took possession. The Court stated:

"The principal thrust of the former cases is that it is only fair and equitable to allow interest from the time the property is 'appropriated,' whether such appropriation is by an order of condemnation or possession. In either instance the landowner is reprived of the beneficial use of his land; and when payment does not coincide with the 'taking' but is postponed, it is only fair that interest accrue from the time that payment ought to have been made until it is actually made. When the defendant took possession of petitioner's land on January 5, 1967, she no longer had the use of her land and could not derive any benefits therefrom. Therefore, interest should accrue from that date."

On the issue of damages, to which issue this suit is limited, the plaintiffs in this suit have retained possession of their land. There has been no flooding of this land since 1963. These plaintiffs have not been deprived of the beneficial use of their land as in the *Sullivan County case;* the condemnor has not had the use of the land and the money too as there existed.

The issue before the Court in this suit is not the amount of damage plaintiffs sustained by the 1963 flood. The issue is the amount the plaintiffs' land was damaged due to the construction of the bridge and embankment. The 1963 flood was evidence the plaintiffs had been damaged by the construction because the natural drainage of overflow water had been impeded.

We therefore conclude interest should accrue on this judgment from the date the jury rendered its verdict as provided in the 1967 amendment to T.C.A. sec. 47-14-110.

The Petition to Rehear i⌐ denied.

Carney, P.J. (W.S.), concurs.

Taylor, J., not participating.