**OSBORNE ENTERPRISES, INC. and East Ridge Development, Inc.**

v.

**CITY OF CHATTANOOGA et al.**

Court of Appeals of Tennessee, Eastern Section.

May 19, 1977.

Certiorari Denied by Supreme Court Jan. 16, 1978.

Spears, Moore, Rebman & Williams, Chattanooga for Osborne Enterprises, Inc. and East Ridge Development, Inc.

Eugene N. Collins and Randall L. Nelson, Chattanooga, for City of Chattanooga.

## OPINION

PARROTT, Presiding Judge (E.S.).

In this inverse condemnation action plaintiffs, Osborne Enterprises, Inc. and East Ridge Development Corporation, Inc., seek damages for the loss of air space above their property and for the cutting of trees on their property that encroach into the defendant airport's glidepath.

Both sides have appealed. The defendants assign error to the circuit judge's allowing plaintiff, Osborne Enterprises, Inc., to amend its original complaint to include East Ridge Development Corporation, Inc. as a party plaintiff. The plaintiffs insist the circuit judge erred in sustaining defendants' motion for summary judgment on the grounds the statute of limitations barred any recovery of damages resulting from the limitation of the height of structures on plaintiffs' property or damages resulting from noise caused by aircraft.

After allowing the amendment and sustaining the motion for summary judgment, the issue of defendants' cutting trees on plaintiffs' property was submitted to a jury and in accord with the jury's verdict, judgment in the amount of $2,000.00 was entered in favor of the plaintiff, East Ridge Development Corporation, Inc.

The transcript of the jury trial has been made a part of this record as a bill of exceptions; however, neither party has assigned error to the jury trial but complain only of matters which were determined by the circuit judge before the trial. Thus, we will limit our review to those matters considered by the circuit judge in allowing the amendment and sustaining the motion for summary judgment.

The pleadings and briefs show East Ridge Development Corporation, Inc. is a wholly owned subsidiary of the original plaintiff, Osborne Enterprises, Inc. Osborne owns the greater part of a large shopping complex on the south side of Brainerd Road known as East Gate Center. Adjoining East Gate Center Osborne owns some additional land on which there is office buildings. East Ridge Development Corporation, Inc. owns property on the north side of Brainerd Road which is adjacent to the defendants' airport. All of plaintiffs' property is in the approach zone of the defendants' Runway 20.

As early as July 13, 1954, ordinances were passed by the City of Chattanooga which undertook to establish glide angles for the airport runways. On January 29, 1969, after Runway 20 was to be extended 200 feet, the glide angle ordinance was amended to lower the angle of the approach zone one foot vertically to fifty feet horizontally from the end of the runway. The actual extension of the runway was not completed and put into use until September 29, 1970. In December 1970, the defendants went onto plaintiffs' property, removed some trees in the approach zone that were thought to be a safety hazard.

On October 14, 1971, Osborne Enterprises brought this inverse condemnation action seeking damages for cutting of the trees

and damages for the ordinance's limiting the height to which plaintiffs could build on the East Gate Center property.

First we will consider the defendants' assignment that the circuit judge erred in allowing Osborne, on May 13, 1976, to amend its complaint to include as a plaintiff East Ridge Development Corporation, Inc., the record owner of the property where the defendants cut the trees. Defendants argue strongly that East Ridge was a stranger to the litigation and since Osborne had no right to bring an action for damages involving property owned by East Ridge, the amended complaint should not relate back to the time of the filing of the original complaint. If the amendment does not relate back, plaintiff's claim is barred by the one-year statute of limitations as set forth in T.C.A. 23–1424.

The Tennessee Rules of Civil Procedure became effective in 1971. "They were designed to simplify and ease the burden of procedure under the sometimes harsh and technical rules of common law pleading. . . . Rule 15.01 provides that leave (to amend) shall be freely given when justice so requires. This proviso in the rules substantially lessen the exercise of pre-trial discretion on the part of a trial judge. Indeed, the statute (§ 20–1505, T.C.A.) which conferred a measure of discretion on trial judges was repealed and Rule 15 stands in its place and stead. That rule needs no construction; it means precisely what it says, that 'leave shall be freely given'". *Branch v. Warren,* 527 S.W.2d 89, 91–92 (Tenn.1975).

Following this policy, Rule 15.03 should be liberally construed and applied. It was designed so cases would be determined on their merits and not on rigid technicalities. However, "the rule does not apply where the amendment introduces a different and additional cause of action. . . . Where the original pleading contains allegations which advise, although not clearly, the nature of the claim and the parties against whom it is being made, an amendment stating more clearly and explicitly the same things relates back to the

commencement of the action and is not affected by the intervening lapse of time; and this is true of an amendment which includes new allegations of facts which existed at the time of the filing of the original complaint. A plaintiff may usually amend, under the relation back provision . . . to substitute or add as plaintiff the real party in interest." 35A C.J.S., Federal Civil Procedure, § 347, p. 531.

Rule 15.03 of the Tennessee Rules of Civil Procedure, which is identical with Rule 15(c) of the Federal Rules of Civil Procedure, provides:

Whenever the claim or defense asserted in the amended pleadings arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provisions is satisfied and if, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a misnomer or other similar mistake concerning the identity of the proper party, the action would have been brought against him. Except as above specified, nothing in this rule shall be construed to extend any period of limitations governing the time in which any action may be brought.

Our Supreme Court in *Karash v. Pigott,* 530 S.W.2d 775, 777 (1975), noted Rule 15.03:

The time-honored "new cause of action" objection to amendments has been substantially eroded by the New Rules of Civil Procedure. Rule 15.03 has never been construed by our courts; however, its language is so clear and unequivocal that it is virtually self-construing. . .

The great liberality of this Rule is convincingly demonstrated by the ensuing provisions permitting a new party, under

certain circumstances, to be brought in notwithstanding the fact that the statute has run at the time of the amendment.

The three primary considerations cited by the federal courts in determining whether an amendment seeking to add or substitute a new party plaintiff would be allowed to relate back under Rule 15(c) to the date of the original pleading so as to avoid the statute of limitations, have been (1) whether the defendant received adequate notice of the claim against him; (2) whether the relation back of such an amendment would unfairly prejudice the defendant; and (3) whether there is an "identity of interest" between the original party plaintiff and the new party plaintiff. In *Williams v. United States*, 405 F.2d 234, 236–238 (Ga.C. A.,1968), as cited in 12 A.L.R.Fed. § 7(a), p. 252, the Court said "that notice was clearly the critical element involved in Rule 15(c) determinations, and that Rule 15(c) was in fact based on the idea that a party who is notified of litigation concerning a given transaction or occurrence is entitled to no more protection from statutes of limitation than one who is informed of the precise legal description of the rights sought to be enforced. . . . In determining whether the adversary has had fair notice, the usual emphasis of 'conduct, transaction or occurrence' is on the operational facts which give rise to a claim by a particular party based on any one or all of the theories conjured up, whether timely or belatedly. But when it comes to a late effort to introduce a new party, something else is added. Not only must the adversary have notice about the operational facts, but it must have had fair notice that a legal claim existed in, and was in effect being asserted by, the party belatedly brought in. This becomes of special importance in situations in which a common set of operational facts gives rise to distinct claims (or defenses) among distinct claimants (or defendants)."

■ Once the defendant has fair notice from the original pleadings that the new party's claim is also involved, then the defendant has suffered no prejudice. Here, the plaintiffs' original complaint sufficient-

ly identifies the property allegedly damaged by defendants so as to prevent any unfair prejudice to the defendants in bringing in the new plaintiff who had record title to the land. The theories of recovery, the type and extent of damage occurring and the type of recovery sought are clearly apparent from the complaint. There is a definite identity of interest between the original plaintiff and the new plaintiff in that East Ridge is pled to be a wholly owned subsidiary of Osborne. Consequently, the three primary considerations in determining whether the amended complaint relates back to the original complaint have been sufficiently satisfied to allow the amendment. Although the defendant must now defend a claim which was thought the mere passage of time had barred, statutes of limitations do not afford such an automatic insulation from suit by such a mechanical procedure. We find the trial judge did not err in allowing the amendment to relate back to the filing of the original complaint.

Turning now to plaintiffs' assignment of error, it is argued the circuit judge erred in finding the lowering the approach zone fails to state a claim upon which relief may be granted and is barred by the application of the statute of limitations, being T.C.A. 23–1424.

■ We take the above quoted portion of the circuit judge's order sustaining the motion for summary judgment to be a finding that the plaintiffs' claim was barred by the statute of limitations and not to mean that the plaintiffs had no cause of action if the defendants had taken the air space over plaintiffs' property. The taking of air space above one's property does in fact create a cause of action upon which relief may be granted. In *Johnson v. City of Greeneville*, 222 Tenn. 260, 435 S.W.2d 476 (1968), our Supreme Court stated:

This court many years ago held, and properly so, that the obtaining of property for public use where the property is either actually appropriated or the common or necessary use of the property is rendered impossible or seriously interrupted constitutes a taking.

Further, in *Jones v. Cocke County*, 57 Tenn. App. 496, 420 S.W.2d 587, 589 (1967), this Court stated that "for there to be a taking, it is not necessary for the owner to be entirely deprived of the use of the property. Any destruction, restriction or interruption of the common and necessary use may constitute a taking." Indeed, the U. S. Supreme Court, in *United States v. Causby*, 328 U.S. 256, 262, 66 S.Ct. 1062, 1066, 90 L.Ed. 1206 (1946), stated:

The path of glide for airplanes might reduce a valuable factory site to grazing land, an orchard to a vegetable patch, a residential section to a wheat field. Some value would remain. But the use of the airspace immediately above the land would limit the utility of the land and cause a diminution in its value.

■ We cannot agree with the circuit judge's order sustaining the motion for summary judgment on the ground plaintiffs' claim was barred by the one year statute of limitations [T.C.A. 23–1424]. The defendants offered in support of their motion a copy of the 1954 ordinance restricting the heights of structures and objects in the vicinity of the airport and the affidavit of the assistant manager of the airport. The affidavit stated the extension of Runway No. 20 was completed and put into use on September 29, 1970, more than one year before the suit was filed. The plaintiffs offered a counter-affidavit of Charles D. Uptain, president of Osborne Enterprises, stating that the plaintiff did not know of the extending and lowering of the glide angle until December 15, 1970. It is clear from these affidavits that there exists a dispute as to when the plaintiff knew or should have known of the alleged injury.

There being conflicting evidence as to when the "taking," if any, did occur, it was error for the circuit judge to sustain the motion for summary judgment. Rule 56.03 forbids the sustaining of a motion for summary judgment unless there is no genuine issue of fact and the movant is entitled to a judgment as a matter of law. See *Evco Corp. v. Ross*, 528 S.W.2d 20 (Tenn.1975).

"The time of the accrual of the cause of action, as affecting the running of the statute of limitations, is frequently a question of fact to be determined by the jury or trier of fact under the evidence, as where the evidence is conflicting or the time is not clearly provided and is a matter of inference from the testimony. On the other hand, if the evidence is undisputed and only one conclusion can be drawn therefrom, the time of the accrual of the cause of action is a question of law to be determined by the Court." 54 C.J.S. Limitations of Actions § 399b, pp. 550–551.

T.C.A. 23–1424 provides:

The owners of land shall . . . commence proceedings within twelve (12) months after the land has been actually taken possession of, and the work of the proposed internal improvements begun . . . . (Emphasis supplied.)

In *Morgan County v. Neff*, 36 Tenn.App. 407, 256 S.W.2d 61 (1952), this Court speaking through Presiding Judge McAmis, in determining the application of the one year statute of limitations, said the following:

In our opinion, if it is to apply at all to such cases, it should be applied in a manner to afford the landowner the statutory period of one year within which to bring suit after injury or after reasonable notice or knowledge of such injury and damage. Where the land is taken either without a conveyance or a condemnation proceeding there is no hardship in holding that the period begins, as the statute expressly provides, when the land is taken possession of.

In *Jones v. Hamilton County*, 56 Tenn. App. 240, 405 S.W.2d 775 (1966), it was held:

T.C.A. Sec. 23–1424 provides that owners of land appropriated to a public use must bring suit for the value of the land within one year "after the land has been actually taken possession of, and the work of the proposed internal improvement begun."

■ The law does require diligence on the part of the landowner. In *Knox Coun-*

ty v. Moncier, 224 Tenn. 361, 455 S.W.2d 153 (1970), our Supreme Court further provided that the property owner cannot "sit idly by and wait to commence his suit at any time which is convenient with him, thereby circumventing the purpose of the stature of limitations. What we do hold is that the onus is on the property owner to institute his suit within one year after he realizes or should reasonably realize that his property has sustained an injury which is permanent in nature. At that time the 'taking' occurs and the statute of limitations begins to run."

We find the circuit judge did not err in allowing plaintiff to amend but did commit error in sustaining defendants' motion for summary judgment and remand the cause for further proceedings not inconsistent with this opinion.

Let the costs incident to this appeal be taxed to the defendants.

GODDARD, J., and T. MACK BLACKBURN, Special Judge, concur.

## OPINION ON PETITION TO REHEAR

PARROTT, Presiding Judge (E.S.).

■ The defendant, City of Chattanooga, petitions this Court to reconsider the effect of Ordinance 5991, passed in 1969, which lowered the approach zone from the extended runway. Defendants argue that since the ordinance, as a matter of law, puts the plaintiffs on notice of the lowered glide path, the one year statute of limitations precludes their cause of action filed in October 1971. We considered this argument in our original opinion and determined then that it was without merit in light of recent inverse condemnation cases in this State that hold the statute of limitations begins to run when the landowner's property is *injured* by the taking, not when the landowner has *notice* of the taking. We will take this opportunity on defendants' petition to rehear to re-emphasize and re-affirm our prior determination.

The leading cases in Tennessee that establish this principle are *Johnson v. City of Greeneville*, 222 Tenn. 260, 435 S.W.2d 476

(1968); *Knox County v. Moncier*, 224 Tenn. 361, 455 S.W.2d 153 (1970); and *Jones v. Cocke County*, 57 Tenn.App. 496, 420 S.W.2d 587 (1967). In each of these cases it is held that "in a suit such as this, the landowner's cause of action does not accrue until an *injury* has been suffered." (Emphasis supplied.) *Jones v. Cocke County*, supra. More specifically, in *Johnson v. City of Greeneville*, supra, 435 S.W.2d at 481, our Supreme Court stated:

We think that this one year statute means that it begins to run within one year from the time of the injury instead of one year from the date of construction.

The defendants cite *Knox County v. Moncier*, supra, for the proposition that summary judgment oh the statute of limitations question was proper in this case because the plaintiffs were put on notice of the taking and should have reasonably realized that their property would be damaged. We can not agree with this strained application of *Moncier*. In *Moncier* the Supreme Court held "that the onus is on the property owner to institute his suit within one year after he realizes or should reasonably realize that his property has sustained an injury which is permanent in nature. At that time the "taking" occurs and the statute of limitations begins to run." Supra, 224 Tenn. at 368, 455 S.W.2d at 156.

The plaintiffs' affidavit establishes the plaintiffs' lack of knowledge of any injury to their property resulting from the lowered glide path. Applying the holding in *Moncier* to this factual situation, the result is a material issue of fact inappropriate for summary judgment. The time of the accrual of the cause of action is not clearly provided and the evidence is in conflict. Therefore, the running of the statute of limitations is a question of fact to be determined by the jury or trier of fact under the evidence and is not an appropriate issue for resolution by motion for summary judgment.

We accordingly overrule defendants' arguments on petition to rehear and re-affirm our original opinion.

GODDARD, J., and T. MACK BLACKBURN, Special Judge, concur.